# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINE MERRIFIELD,<br><br>               Plaintiff,<br>   v.<br><br>MINER'S INN RESTAURANT &<br>LOUNGE, et al.,<br><br>               Defendants. | 1:05-CV-1344-OWW-SMS<br><br>FINDINGS AND RECOMMENDATION RE:<br>PLAINTIFF'S MOTION FOR DEFAULT<br>JUDGMENT (DOC. 23) |

Plaintiff is proceeding with a civil action over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 201 et seq. and 1331, based on Plaintiff's alleging a claim under the Fair Labor Standards Act; Plaintiff also alleges state tort claims over which the Court has jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiff has filed a motion for default judgment, which has proceeded before a Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 72-302(c)(19).

### BACKGROUND

By motion filed on July 6, 2006, Plaintiff seeks judgment against Defendants Miner's Inn Restaurant & Lounge (Miner's), Parker Fausnight (Fausnight) and Shane Sweat (Sweat) for unpaid overtime wages and penalties, compensatory and punitive damages

1

1  for sexual harassment and unlawful termination, and attorney's

2  fees and costs. The declarations of Costa Kerestenzis and

3  Kristine Merrifield were filed with the motion. At a hearing held

4  on September 1, 2006, Costa Kerestenzis of Beeson, Tayer &

5  Bodine, APC, appeared on behalf of Plaintiff. There was no

6  appearance on behalf of Defendant. Supplemental points and

7  authorities and supplemental declarations of Kristine Merrifield,

8  Costa Kerestenzis, and Eric Rouen were served and filed on

9  September 15, 2006. A copy of Plaintiff's initial declaration

10 that contained the second page was filed on September 19, 2006.

11 The matter was thus submitted to the Court for consideration and

12 the issuance of findings and a recommendation.

13                              ANALYSIS

14     I. Legal Standards

15     A court has the discretion to enter a default judgment

16 against one who is not an infant, incompetent, or member of the

17 armed services where the claim is for an amount that is not

18 certain on the face of the claim and where 1) the defendant has

19 been served with the claim; 2) the defendant's default has been

20 entered for failure to appear; 3) if the defendant has appeared

21 in the action, the defendant has been served with written notice

22 of the application for judgment at least three days before the

23 hearing on the application; and 4) the court has undertaken any

24 necessary and proper investigation or hearing in order to enter

25 judgment or carry it into effect. Fed. R. Civ. P. 55(b); Alan

26 Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th

27 Cir. 1988). Factors that may be considered by courts in

28 exercising discretion as to the entry of a default judgment

                                   2

1  include the nature and extent of the delay, <u>Draper v. Coombs</u>, 792

2  F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to

3  the plaintiff, <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th

4  Cir.1986); the merits of plaintiff's substantive claim, <u>id.</u>; the

5  sufficiency of the allegations in the complaint to support

6  judgment, <u>Alan Neuman Productions, Inc.</u>, 862 F.2d at 1392; the

7  amount in controversy, <u>Eitel v. McCool</u>, 782 F.2d at 1471-1472;

8  the possibility of a dispute concerning material facts, <u>id.</u>;

9  whether the default was due to excusable neglect, <u>id.</u>; and the

10  strong policy underlying the Federal Rules of Civil Procedure

11  that favors decisions on the merits, <u>id.</u>

12      A default judgment generally bars the defaulting party from

13  disputing the facts alleged in the complaint, but the defaulting

14  party may argue that the facts as alleged do not state a claim.

15  <u>Alan Neuman Productions, Inc. v. Albright</u>, 862 F.2d 1388, 1392.

16  Thus, well pleaded factual allegations, except as to damages, are

17  taken as true; however, necessary facts not contained in the

18  pleadings, and claims which are legally insufficient, are not

19  established by default. <u>Cripps v. Life Ins. Co. of North America</u>,

20  980 F.2d 1261, 1267 (9th Cir. 1992); <u>TeleVideo Systems, Inc. v.</u>

21  <u>Heidenthal</u>, 826 F.2d 915, 917 (9th Cir. 1987).

22      II. <u>Status of the Parties, Service, Notice, and Entry of</u>
         <u>Default</u>

23

24      The first amended complaint alleges that Defendant Miner's

25  is a business entity of unknown type operating a restaurant and

26  lounge in Mariposa, California, and an employer within the

27  meaning of the pertinent statutes. Defendant Fausnight was the

28  owner/operator of the inn and an employer and supervisor within

3

the meaning of the pertinent statutes. Defendant Sweat was employed as the general manager of the inn and was a supervisor. (FAC p. 3.)

Plaintiff's applications for the entry of default against these defendants demonstrate that Plaintiff's registered process server served Defendant Miner's on December 12, 2005, by leaving copies of the relevant documents at Miner's usual place of business with an adult person apparently in charge, and then on December 13, 2005, mailing copies to the address. Further, Plaintiff served Fausnight, described as the owner/operator of the inn in the complaint, by personal delivery. This was in compliance with Fed. R. Civ. P. 4(e)(1) and Cal. Civ. Proc. Code §§ 416.40(a) and 415.20.

Likewise, the request for entry of default against Defendant Sweat demonstrates that a registered process server served Defendant Sweat personally on February 23, 2006 in compliance with Fed. R. Civ. P. 4(e).

Further, the declarations submitted in connection with the requests for entry of default establish that Defendants all failed to respond to the complaint by answer or otherwise. It appears that the entry of default was proper.

The motion for default judgment was served on Defendants Miner's, Fausnight, and Sweat by mail on July 6, 2006. Thus, if compliance were necessary, Plaintiff would be in compliance with Fed. R. Civ. P. 55(b)(2), which requires that written notice of an application for default judgment be served at least three days prior to the hearing on the defaulting party.

The Court notes that no formal appearance was made by any

defendant.[1]

Further, the notice provided by the complaint was adequate pursuant to Fed. R. Civ. P. 55(d) and 54(c), which require that a judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Plaintiff expressly alleged in the complaint that Plaintiff sought unpaid regular and overtime wages with interest, liquidated damages and penalties as provided by law, compensatory and punitive or exemplary damages, costs, and attorney's fees. (Complt. at 14-15.)

Fed. R. Civ. P. 55(d) and 54(c) require that a judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Here, the precise amount of damages sought was not stated in the complaint, although it was stated in the motion for default judgment. It has been held that where a type of damages is requested in the complaint in an amount to be proved, but the amount is not specified, recovery in excess of an amount stated is permitted. Henry v. Sneiders, 490 F.2d 315, 317 n. 2 (9th Cir. 1974), cert. denied Sneiders v. Henry, 419 U.S. 1060 (1974). Here, Defendants were given appropriate notice of the amount sought in the papers seeking the default judgment, and Defendants were served with these papers. Rule 54(c) has been satisfied.

In a declaration, Costa Kerestenzis declares that none of the Defendants is an infant, incompetent, or member of the armed

---

[1]Attorney Kerestenzis declares that Defendant Sweat once called after service on or about March 9, 2006 and inquired what he needed to do to respond to the complaint. Kerestenzis informed him that no legal advice could be given but that the service documents instructed him to respond and where a response needed to be filed and served. No further communications from Defendant Sweat were received.

1  forces.

2      In summary, there is no defect with respect to notice,
3  status or interest of the parties, or presence of a member of the
4  armed forces, which would render entry of default judgment
5  inappropriate.

6      II. <u>Legal Sufficiency of the Complaint</u>

7      The Court notes that in the supplemental points and
8  authorities, Plaintiff states that Plaintiff is not seeking
9  judgment on the twelfth claim for relief, unfair business
10 practices. (Supp. Memo. p. 2.)

11          A. <u>Sexual Harassment, FEHA</u>

12     At all relevant times, Plaintiff was employed at the MINER'S
13 INN. (Complaint at ¶5.)[2] At all relevant times, Defendant MINER'S
14 INN was a restaurant located in Mariposa, California, and an
15 employer within the meaning of California Fair Employment and
16 Housing Act (FEHA), Cal. Govt. Code §§ 12926(d) and
17 12940G)(4)(A), and the Fair Labor Standards Act (FLSA), as the
18 business affected interstate commerce, 29 U.S.C. §§203, 207. (<u>Id.</u>
19 at ¶6.) At all relevant times, Defendant FAUSNIGHT was the
20 owner/operator of the MINER'S INN, and an employer and supervisor
21 within the meaning of FEHA, Cal. Govt. Code §§ 12926(r) and
22 12940(j)(4)(A). (Id. at ¶7.) At all relevant times, Defendant
23 SWEAT was employed as the general manager of the MINER'S INN, and
24 a supervisor within the meaning of FEHA, Cal. Govt. Code
25 §12940(j)(4)(A). (Id. at ¶8.)

26     Plaintiff began her employment with the MINER'S INN in

27

28         [2] Plaintiff alleged that she was a bar manager beginning in September 2004 until termination in December
   2004. The harassment allegedly began on the second day of her employment. (Cmplt ¶ 1.)

September 2004. (Complaint at ¶9.) Plaintiff's direct supervisor was SWEAT, the general manager of the MINER'S INN. Plaintiff was employed as a "bar manager," whose duties primarily dealt with tending the bar. (Id.) During Plaintiffs employment at the MINER'S INN, she was subjected to a pattern of sexual harassment by SWEAT. This pattern included, but was not limited to: inappropriate comments made by SWEAT, such as "it's only two inches long but I'll still make you happy"; details by SWEAT of his sexual escapades with other women; descriptive comments made by SWEAT regarding his pornography collection; sexual comments by SWEAT directed towards Plaintiff and other women; SWEAT's unlawful touching and grabbing of Plaintiffs hips, genital area, breasts and buttocks, including pulling Plaintiff close during conversations and pressing his crotch into her; sexual propositions by SWEAT to Plaintiff, including invitations to accompany him to his room (SWEAT lived at the MINER'S INN hotel) during work hours; and inappropriate stares by SWEAT. (Complaint at ¶10; Merrifield.) SWEAT's conduct created a hostile work environment which was known by everyone at the MINER'S INN, as SWEAT engaged in similar conduct with other female employees and customers.(Complaint at ¶1.) Plaintiff specifically brought SWEAT's conduct to the attention of FAUSNIGHT. However, nothing was done to correct or stop SWEAT's inappropriate behavior. Rather, SWEAT was left to do as he pleased. (Complaint at ¶1.) During this time period SWEAT subjected other employees and customers to similar harassment and propositions. This also was brought to the attention of FAUSNIGHT. Again, nothing was done to correct or stop SWEAT's pattern of inappropriate behavior.

(Complaint at ¶12.) SWEAT's outrageous conduct culminated in his termination of Plaintiff on Christmas Eve, December 24, 2004, because she would not succumb to his propositions and harassment. (Complaint at ¶13.)

After being terminated, Plaintiff looked for another job. However, since Plaintiff lived in a small community in which the service industry jobs were tied to a few people, such as FAUSNIGHT, it was difficult to find another job and Plaintiff did not secure employment until June 22, 2005. (Merrifield Declaration at ¶8.)

These facts establish that under California's Fair Employment and Housing Act (FEHA), Defendant Sweat, Plaintiff's supervisor, engaged in harassment because of sex in violation of Cal. Govt. Code § 12940(j). A supervisor is personally liable under FEHA if he or she engages in harassing conduct or retaliation. Page v.Superior Court, 31 Cal.App.4th 1206, 1212 (1995). Further, Miner's and Fausnight, Plaintiff's employers and covered entities under Cal. Govt. Code §§ 12926(d) and 12940(j), were responsible for an unlawful employment practice by failing to take all reasonable steps necessary to prevent discrimination and harassment from occurring pursuant to § 12940(k), and they were strictly liable for harassment caused by Sweat, the supervisor, pursuant to § 12940(j). State Dept. of Health Services v. Superior Court, 31 Cal.4th 1026, 1040-41 (2003). The harassment was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. Fisher v. San Pedro Peninsula Hospital, 214 Cal.App.3d 590, 608 (1989). Further, Sweat terminated Plaintiff

1  for resisting his sexual harassment in violation of § 12940(h)

2  and thereby resisting practices forbidden by FEHA.

3        B. <u>Assault and Battery</u>

4        The same facts are sufficient to state a claim for battery,

5  an invasion without consent of the interest in freedom from

6  intentional, unlawful, and harmful or offensive contact with the

7  person. <u>Barbara A. v. John G.</u>, 145 Cal.App.3d 369, 375 (1983). An

8  assault is also made out because the facts show intentional

9  conduct causing an apprehension of contact. <u>See</u>, 5 Witkin,

10 Summary of California Law § 381-83 (2005). Plaintiff alleged that

11 Sweat touched, groped, and fondled Plaintiff without her consent;

12 the conduct was wilful, malicious, and reckless and/or

13 accomplished with a conscious disregard of Plaintiff's rights.

14 She further alleged that the other Defendants were vicariously

15 liable as Sweat's employer. (Cmplt. ¶ 33-36.) Employers are

16 liable for the intentional torts of their employees committed

17 within the scope of the employment, such as battery and

18 intentional infliction of emotional distress. <u>Lisa M. v. Henry</u>

19 <u>May Newhall Memorial Hospital</u>, 12 Cal.4th 291, 297 (1995).

20        C. <u>Intentional Infliction of Emotional Distress</u>

21        The same facts are sufficient to state a claim for

22 intentional infliction of emotional distress, consisting of

23 outrageous conduct by the defendant undertaken with the intention

24 to cause or reckless disregard of the probability of causing

25 emotional distress, severe emotional suffering, and actual and

26 proximate causation of the emotional distress. <u>Molko v. Holy</u>

27 <u>Spirit</u>, 46 Cal.3d 1092, 1120 (1988) (superseded by statute with

28 respect to an unrelated point). Plaintiff alleged that Sweat's

conduct was outrageous, done with intent to cause or with
reckless disregard of causing severe emotional distress, and that
it caused Plaintiff severe emotional distress. She further
alleged that the other defendants were vicariously liable as
Sweat's employer. (Cmplt. ¶¶ 37-41.)

### D. Unruh Civil Rights Act

The same facts are sufficient to state a claim for a
violation of Cal. Civ. Code §§ 51.9 and 52, the Unruh Civil
Rights Act. Section 51.9 provides that a person has a claim for
sexual harassment where there is a business or professional
relationship between the plaintiff and defendant; the defendant
makes sexual advances, solicitations, sexual requests, demands
for sexual compliance, or other sexual or hostile conduct based
on gender that is pervasive or severe; there is an inability by
the plaintiff easily to terminate the relationship; and the
plaintiff has suffered or will suffer economic loss or
disadvantage or personal injury, including emotional distress.
Plaintiff alleged that the conduct was wrongful, intentional, and
harmful contact constituting sexual harassment in violation of §
51.9; further, it was the proximate cause of damages and that the
conduct was wilful, malicious, and oppressive entitling Plaintiff
to exemplary or punitive damages pursuant to Cal. Civ. Code § 52.
(Cmplt. ¶ 77-80.) Cal. Civ. Code § 52(b) attaches liability to
whoever denies the right provided for by § 51.9, or who aids,
incites, or conspires in the denial, for actual damages for each
offense as well as exemplary damages. See Winarto v. Toshiba
America Electronics Components, 274 F.3d 1276, 1290 n. 16 (9th
Cir. 2001).

1          E. <u>Wrongful Termination</u>

2     The same facts state a claim for wrongful termination or

3 discharge in violation of public policy, consisting of

4 termination of employment undertaken pursuant to a contract of

5 employment in violation of a public policy that is fundamental,

6 beneficial for the public, and embodied in a statute,

7 constitutional provision, or administrative regulation. <u>Turner v.</u>

8 <u>Anheuser-Busch, Inc.</u>, 7 Cal.4th 1238, (1994) 1252; <u>Green v. Ralee</u>

9 <u>Engineering Co.</u>, 19 Cal.4th 66, 74 (1998). Plaintiff alleged that

10 the termination for not succumbing to Sweat's sexual propositions

11 was in violation of the public policy prohibiting sexual

12 harassment in the workplace; it was the direct and proximate

13 cause of injuries and damages to Plaintiff; and it was undertaken

14 with malice and oppression. (Cmplt. ¶¶42-45.)

15          F. <u>Overtime Wages</u>

16     Plaintiff alleged that beginning in September 2004 and

17 continuing through December 2004, Defendants Miner's and

18 Fausnight failed to pay Plaintiff's earned regular and overtime

19 wages, and failed to provide required meal and rest periods.

20 (Cmptl ¶ 1.) Plaintiff made $400.00 per week and regularly worked

21 over eight hours a day and fifty to sixty hours a week, but

22 Defendants failed to pay overtime wages. Plaintiff alleged that

23 pursuant to Cal. Lab. Code § 510 and California Industrial

24 Welfare Commission Wage Order number 5-2001, she was entitled to

25 overtime compensation at the rate of one and one-half times the

26 regular rate of pay for work over eight hours per day or over

27 forty hours per week; double the employee's regular rate of pay

28 for work over twelve hours per day; and one and one-half times

the regular rate for work performed on the seventh consecutive day of work and double the regular rate for work performed in excess of eight hours on any seventh consecutive day of work. (Cmplt. ¶ 48.) Further, Plaintiff regularly suffered or was permitted to work in excess of eight hours per day and forty hours per week and on seven consecutive days, but Defendant failed to pay Plaintiff appropriate overtime for such hours in violation of the statute and wage order. (Id. ¶ 49.) Plaintiff also alleged that she was entitled to recover monetary damages equal to the sum of her unpaid overtime wages plus interest pursuant to Labor Code § 1194.

Labor Code § 510 provides that eight hours of labor constitutes a day's work; any work in excess of eight hours in one workday and any work in excess of forty hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Further, any work in excess of eight hours on any seventh day of a workweek should be compensated at the rate of no less than twice the regular rate. Cal. Lab. Code § 510(a).

Thus, Plaintiff's complaint adequately states a claim for compensation of overtime wages under state law.

With respect to federal law, Plaintiff alleged that the Fair Labor Standards Act (FLSA) mandated that employees receive overtime compensation at one and one-half times the regular rate of pay for work over forty hours per week. Pursuant to 29 U.S.C. § 207, Plaintiff is entitled to compensation at that rate.
///

1                    G. Earned Wages

2        Plaintiff alleged that Defendants Miner's and Fausnight did

3   not issue Plaintiff her final check until January 5, 2005,

4   thirteen days after her termination, and the check did not fully

5   compensate Plaintiff for the last two-week period of work. (FAC ¶

6   17.) Plaintiff alleged that Defendants failed to pay her earned

7   wages in the issuance of her final check in violation of

8   California Industrial Welfare Commission Order No. 5-2001 (8 Cal.

9   Code. Regs. § 11050), as authorized by Cal. Lab. Code §§ 517 and

10  1173. (Id. ¶¶ 56-61.)

11       Cal. Lab. Code § 201 provides that if an employer discharges

12  an employee, the wages earned and unpaid at the time of discharge

13  are due and payable immediately. Plaintiff has established her

14  entitlement to earned wages omitted from her final check.

15                   H. Omitted Rest Periods

16       Plaintiff alleged that Plaintiff was regularly suffered or

17  permitted to work without being provided a rest period as

18  mandated by Cal. Labor Code § 226.7, which states that no

19  employer shall require any employee to work during any meal or

20  rest period mandated by an applicable order of the California

21  Industrial Welfare Commission (IWC), and that if an employer

22  fails to provide an employee a meal or rest period, the employer

23  shall pay the employee one additional hour of pay at the regular

24  rate of compensation for each work day that the period was not

25  provided. (FAC ¶¶62-67.) Plaintiff further alleged that IWC Order

26  5-2001 mandated that Defendants provide Plaintiff with a ten-

27  minute rest period every four hours or major fraction thereof

28  worked. (Id. ¶ 64.)

1    In her motion, Plaintiff also points to Cal. Lab. Code 512,

2    which requires, depending on the hours worked, a meal period of

3    not less than thirty minutes or two such meal periods.

4    Plaintiff has alleged facts showing that she is entitled to

5    monetary damages equal in amount to one hour of pay for each work

6    day that a rest period was not provided.

7    III. <u>Appropriateness of Default Judgment</u>

8    Here, it does not appear that there is any risk of mistake

9    or excusable neglect on the part of anyone with a potential

10   interest in the subject matter of the instant action. Further,

11   there is no apparent likelihood of a dispute as to a material

12   fact essential to the Plaintiff's case. No just cause for delay

13   appears. It is apparent from the declarations submitted to the

14   Court that none of the defendants is an infant, incompetent, or

15   member of the armed services. There does not appear to be any

16   reason why the general policy in favor of a decision on the

17   merits would warrant refusing to enter the requested default

18   judgment.

19   Accordingly, the Court finds that Plaintiff has shown its

20   entitlement to a default judgment.

21   IV. <u>Recovery</u>

22        A. <u>FEHA</u>

23   Under FEHA, a plaintiff may recover all relief generally

24   available in noncontract actions, including all damages

25   proximately caused by the hostile working environment and

26   unlawful termination, as well as punitive damages. <u>Commodore Home</u>

27   <u>Systems, Inc. v. Superior Court</u>, 32 Cal.3d 211, 221 (1982);

28   <u>Redfield v. Insurance Co. of North America</u>, 940 F.2d 542, 547 (9th

Cir. 1991).

### 1) Loss of Earnings

Plaintiff claims $15,625.00 against all defendants, jointly and severally, to compensate her for loss of earnings until she secured another job. Plaintiff's declaration establishes that she was out of work from December 24, 2004, through June 22, 2005, or twenty-five weeks. (Decl. p. 3.) Plaintiff declares that she was working fifty-five hours per week (Decl. p. 2), and thus she was entitled to fifteen hours of overtime per week in addition to her usual weekly gross wage of $400.00. Fifteen hours of overtime at $15.00 per hour (time and one-half) equals $225.00, which, when added to $400.00 yields a weekly wage of $625.00. That sum multiplied by 25 weeks results in a sum of $15,625.00.

Further, in her supplemental declaration, Plaintiff states that she earned $150.00 per week in tips, or a total of $3,750.00.

Plaintiff has established damages in the form of lost earnings in the amount of $19,375.00.

### 2. Emotional Distress

Plaintiff also claims entitlement to damages for emotional distress and mental anguish. Emotional distress damages may be awarded under FEHA as part of compensatory damages. Wilson v. Safeway Stores, 52 Cal.App.4th 267, 273 (1997). Reasonable attorney's fees and costs are also awarded to the prevailing party. Cal. Govt. Code 12965(b).

Plaintiff alleges in her supplemental declaration that she suffered anxiety and distress because of Sweat's outrageous sexual harassment, assault, and battery; when she acquired

1  medical insurance in October 2005, she visited her doctor about
2  the anxiety and distress and has taken prescribed medications
3  since December 2005. (Supp. Decl. p. 2.) Plaintiff seeks
4  $100,000.00 for her distress based on research by Plaintiff's
5  counsel into jury awards in similar cases. (Supp. Decl. of
6  Keretenzis ¶ 9.) The Court concludes that an award of $100,000.00
7  is appropriate.

8                   3. <u>Punitive Damages</u>

9       Plaintiff seeks punitive damages.

10      Plaintiff argues that she is entitled to punitive damages
11 under the California common law of torts, FEHA, and the Unruh
12 Civil Rights Act. Cal. Civ. Code §§ 3294, 52, <u>Commodore v</u>. <u>Home</u>
13 <u>Systems, Inc. v. Superior Court</u>, 32 Cal.3d 211, 221 (1982).
14 Plaintiff alleged that Defendants engaged in outrageous conduct
15 in the nature of sexual harassment and battery and tolerance
16 thereof; Defendant has engaged in wilful and repeated disregard
17 of her rights. Plaintiff alleged that the conduct of Sweat, as
18 well as Fausnight's failure to stop or prevent such conduct
19 despite knowledge thereof, was severe and pervasive and caused
20 severe emotional distress, mental anguish, fear, shock, and
21 humiliation.

22      Cal. Civ. Code § 3294 provides for damages for the sake of
23 example and by way of punishing the defendant in an action for
24 breach of an obligation not arising from contract, where it is
25 proven by clear and convincing evidence that the defendant has
26 been guilty of oppression, fraud, or malice.

27      Punitive damages are designed to serve the purposes of
28 deterrence and retribution. The Due Process Clause prohibits the

1  imposition or arbitrary or grossly excessive punitive damages;

2  factors to consider in determining the amount of punitive damages

3  include to consider three guideposts: 1) the degree of

4  reprehensibility of the defendant's misconduct; 2) the disparity

5  between the actual or potential harm suffered by the plaintiff

6  and the punitive damages award (multipliers of a single digit

7  generally should not be exceeded); and 3) the difference between

8  the punitive damages awarded by the jury and the civil penalties

9  authorized or imposed in comparable cases. State Farm v.

10 Campbell, 538 U.S. 408, 418, 425 (2003).

11     Malice is present where there is a motive and willingness to

12 vex, harass, annoy, or injure. Wolfsen v. Hathaway, 32 Cal.2d

13 632, 647 (1948). It may be proved by circumstantial evidence.

14 Bertero v. National General Corp., 13 Cal.3d 43, 66 (1974), such

15 as conduct undertaken in reckless disregard of injurious

16 consequences, Toole v. Richardson-Merrell, 251 Cal.App.2d 689,

17 713, 719 (1967) (confirming that a defendant's wilful,

18 intentional, wrongful conduct done in reckless disregard of

19 injuries consequences is sufficient from which to infer malice).

20 Here, the conduct alleged by Plaintiff is sufficient to support a

21 finding of malice that would support an award of punitive

22 damages. Given the outrageousness of the conduct and the factual

23 showing that the conduct was undertaken with conscious disregard

24 for Plaintiff's rights and with malice, the Court concludes that

25 Plaintiff should be awarded punitive damages against Defendants

26 Fausnight and Miner's in the amount of $50,000.00, and against

27 the individual Defendant Sweat in the amount of $25,000.00.

28 ////

B. <u>Tort Damages for Battery, Intentional
   Infliction of Emotional Distress</u>

In the supplemental memorandum, Plaintiff states that the claims for relief are cumulative and do not provide any separate and distinct remedy form the other with exception of the Unruh Civil Rights Act claims pursuant to Cal. Civ. Code § 52(b)(1), which states that the person who denies a protected right is liable for actual damages as well as an amount to be determined for exemplary damages). Thus, Plaintiff is entitled to the same damages under California noncontractual or tort law.

C. <u>Unruh Civil Rights Act</u>

Cal. Civ. Code § 52(b) provides that anyone who denies a right provided by § 51.9 is liable for actual damages, exemplary damages, and attorney's fees as may be determined by the Court. Again, on this claim Plaintiff has demonstrated that she is entitled to actual and exemplary damages as indicated in the preceding analysis.

D. <u>Overtime Wages</u>

Labor Code § 1194 provides that notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation is entitled to recover in a civil action the unpaid balance with interest, reasonable attorney's fees, and costs of suit. Plaintiff alleged that she made $400.00 per week, or an hourly wage of $10.00. She computed one and one-half times her regular rate of pay to be $15.00 per hour, at fifteen hours a week, for the fifteen weeks for which Plaintiff was employed. (Mot. p. 8 n. 4.) The total of overtime wages established due from Defendants

Miner's and Fausnight pursuant to the California Labor Code is $3,375.00.

Likewise, 29 U.S.C. § 207 provides for compensation for work over forty hours a week at one and one-half times the regular rate of pay. In addition, pursuant to 29 U.S.C. § 216(b), an employee may recover from an employer who violates § 207 the unpaid minimum or overtime compensation, an additional equal amount as liquidated damages, and costs and a reasonable attorney's fee.

### E. Earned Wages

Plaintiff seeks $320.00 in unpaid earned wages for Defendant's wage and hour violations. (Mot. pp. 2, 8.) Plaintiff establishes in her declarations that she was paid $400.00 for one week's wages when she received her final check, issued January 5, 2005, whereas, she had worked nine days, or seventy-two hours; she was not paid for thirty-two regular hours and twenty overtime hours. Thus, she would be entitled to an additional four days' pay, or $320.00 ($80.00 x 4 = $320.00).

### F. Late Paycheck

Plaintiff also seeks $1,040.00 for Defendants' failure to issue Plaintiff's paycheck in a timely manner. (Mot. pp. 2, 12.) Plaintiff is entitled to this penalty pursuant to Labor Code § 203, which provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced, but the wages shall not continue for more than 30 days.

19

1  Plaintiff established that in violation of § 201, her final

2  paycheck was not issued to her until January 5, 2005, thirteen

3  days after her termination. (FAC ¶ 17; Decl. ¶ 7.) Thus,

4  Plaintiff is entitled to $1,040.00 (13 x $80.00 = $1,040.00) from

5  Defendants Miner's and Fausnight.

6         G. Rest Periods

7     Cal. Labor Code § 226.7(b) provides:

8         If an employer fails to provide an employee a meal period
          or rest period in accordance with an applicable order of
9         the Industrial Welfare Commission, the employer shall
          pay the employee one additional hour of pay at the
10        employee's regular rate of compensation for each work day
          that the meal or rest period is not provided.
11
   Plaintiff seeks one hour of pay for each day Plaintiff was not
12
   allowed to take her breaks; Plaintiff declares that she was never
13
   allowed to take breaks, and that she worked from September 13,
14
   2004, through December 24, 2004, or fifteen weeks. (Supp. Decl. ¶
15
   2.) Plaintiff calculates this amount as $10 per day five days a
16
   week, for fifteen weeks ($10.00 x 5 [days per week]= $50.00 per
17
   week x 15 [weeks] = $750.00).
18
      The Court concludes that Plaintiff is entitled to judgment
19
   against Defendants Miner's and Fausnight for penalties for
20
   failing to provide breaks in the amount of $750.00.
21
         H. Attorney's Fees
22
      Plaintiff has alleged violations of statute that warrant an
23
   award of reasonable attorney's fees. Cal. Gov. Code § 12965(b)
24
   (permitting the Court to award to the prevailing party a
25
   reasonable attorney's fee and costs); Cal. Civ. Code § 52(b)
26
   (providing that whoever denies a right provided by § 51.9 is
27
   liable for actual damages and, in addition, attorney's fees as
28

                                    20

may be determined by the Court); and Cal. Lab. Code § 1194 (permitting recovery by an employee reasonable attorney's fees and costs of suit).

It is the burden of the party seeking an award of fees to submit evidence supporting the hours worked and rates claimed, and when the documentation of hours is inadequate, a court may reduce an award accordingly. Hensley v. Eckerhart, 461 U.S. 424, 433, 437. A party requesting a fee award has the burden of presenting detailed records of the time spent, so that the judge can make a fair evaluation of the amount of fees warranted. The records should be comparable to those that a private attorney would present to a client to substantiate a fee. Evers v. Custer County, 745 F.2d 1196, 1205 (9th Cir. 1984), citing Hensley v. Eckerhart, 461 U.S. 424. The minimum required for satisfaction of this burden is to list hours and identify the general subject matter of the time expenditures. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000). Fee awards will be set aside where summaries make it very difficult to ascertain whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours. Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 623 (9th Cir. 1993).

Here, Plaintiff claimed before the hearing on this motion 39.5 hours of attorney time. Billing documents confirm 39.5 hours of time spent by attorneys Kerestenzis and Rabinowitz. The billing rate is $300.00 per hour, which by counsel's declaration is established to be a reasonable rate prevailing in the community for comparable contingency work. The Court notes the relative thoroughness with which counsel for Plaintiff covered

1  the law pertinent to the motion.

2      Plaintiff also establishes that an additional 16.5 hours of

3  attorney time was expended to prepare for and drive to and from

4  the hearing, attend the hearing, and prepare supplemental

5  filings. (Supp. Decl. Kerestenzis ¶ 4.)

6      Accordingly, Plaintiff has shown entitlement to attorney's

7  fees for 56 hours at $300.00 per hour, or $16,800.00.

8      Plaintiff also seeks 7.8 hours of clerk time (reduced from

9  42 hours) for time spent by a law clerk who was a law school

10  graduate and is presently licensed to practice. Plaintiff

11  establishes by the declaration of Kerestenzis that time expended

12  by such a law clerk is customarily billed to clients at the rate

13  of $110.00 per hour or more. A comparison of the law clerk's

14  transactional record (an exhibit to the Declaration of Eric D.

15  Rouen) with that of the attorneys reveals that the reduction of

16  clerk's hours to 7.8 to avoid duplications was reasonable.

17      Accordingly, Plaintiff is entitled to attorney's fees for

18  7.8 hours of law clerk time at $110.00 per hour, or $858.00.

19      Plaintiff has thus shown entitlement to reasonable

20  attorney's fees of $17,658.00.

21                  I. <u>Costs</u>

22      Plaintiff seeks costs, including a filing fee of $250.00,

23  service fees of $390.00, investigator fees of $428.45, overnight

24  mail charges of $58.62, and $73.00 for in-house photocopies at

25  $.10 per copy. Plaintiff may apply for costs pursuant to Fed. R.

26  Civ. P. 54(d) and Local Rule 54-292(b).

27      IV. <u>Form of Judgment</u>

28      Plaintiff is entitled to judgment against her employer,

22

Defendants Miner's and Fausnight, for overtime wages (seventh and eighth claims for relief), regular wages (ninth claim for relief), rest period penalties (tenth claim for relief), and thirteen days' pay for untimely payment of wages (eleventh claim for relief).

Plaintiff is entitled to judgment against her employer, Defendants Miner's and Fausnight, as well as from her supervisor, Defendant Sweat, relief for sexual harassment and wrongful termination based on her first claim (sexual harassment under FEHA) second claim (failure to prevent harassment under FEHA), third claim (assault), fourth claim (battery), fifth claim (intentional infliction of emotional distress), sixth claim (wrongful or tortious discharge against public policy), and thirteenth claim (sexual harassment under the Unruh Civil Rights Act).

Plaintiff is entitled to entry of judgment against the Defendants jointly and severally.

<u>RECOMMENDATION</u>

Accordingly, it IS RECOMMENDED that

1) Plaintiff's motion for default judgment BE GRANTED, and

2) Judgment BE ENTERED for Plaintiff against Defendants as follows:

a. Against Defendants MINER'S INN and PARKER FAUSNIGHT, jointly and severally, in the amount of $3,375.00 to compensate Plaintiff for unpaid earned overtime wages;

b. Against Defendants MINER'S INN and PARKER FAUSNIGHT, jointly and severally, in the amount of $320.00 to compensate Plaintiff for unpaid earned regular wages;

1    c. Against Defendants MINER'S INN and PARKER FAUSNIGHT,
2 jointly and severally, in the amount of $740.00 for the
3 Defendants' failure to provide Plaintiff statutorily required
4 breaks;

5    d. Against Defendants MINER'S INN and PARKER FAUSNIGHT,
6 jointly and severally, in the amount of $1,040.00 as a penalty
7 for Defendants' failure to issue Plaintiff her final check in a
8 timely manner;

9    e. Against Defendants MINER'S INN, PARKER FAUSNIGHT,
10 and SHANE SWEAT, jointly and severally, in the amount of
11 $19,375.00 to compensate Plaintiff for her lost earnings caused
12 by the unlawful harassment and termination;

13    f. Against Defendants MINER'S INN, PARKER FAUSNIGHT,
14 and SHANE SWEAT, jointly and severally, in the amount of
15 $100,000.00 to compensate Plaintiff for her emotional distress
16 damages caused by the unlawful harassment and termination;

17    g. Against Defendant MINER'S INN in the amount of
18 $50,000.00 for punitive damages to punish and deter said
19 Defendant for the unlawful harassment and termination;

20    h. Against Defendant PARKER FAUSNIGHT in the amount of
21 $50,000.00 for punitive damages to punish and deter said
22 Defendant for the unlawful harassment and termination;

23    i. Against Defendant SHANE SWEAT in the amount of
24 $25,000.00 for punitive damages to punish and deter said
25 Defendant for the unlawful harassment and termination; and

26    j. Against all three Defendants in the amount of
27 $17,658.00 for attorney's fees.

28    This report and recommendation is submitted to the United

24

States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 21, 2006**                        **/s/ Sandra M. Snyder**
icido3                                                    UNITED STATES MAGISTRATE JUDGE